**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EDWARD P. ABELY COMPANY, INC., | ) |
| | ) |
| Plaintiff/Defendant-in-Counterclaim, | ) |
| | ) |
| v. | ) |
| | ) |
| ALLEN E. ABELY, | ) |
| | ) |
| Defendant, and | ) |
| | ) |
| LAKE, INC., | ) |
| | ) |
| Defendant/Plaintiff-in-Counterclaim. | ) |
| | ) |
| LAKE, INC., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES DONLAN, | ) |
| | ) |
| Third-Party Defendant. | ) |

No. 1:24-cv-11930-JEK

**MEMORANDUM AND ORDER ON PLAINTIFF AND COUNTERCLAIM
DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY
DEFENDANT'S MOTION TO DISMISS THIRD-PARTY COMPLAINT**

**KOBICK, J.**

This case arises from a series of business disputes between two heating, ventilation, and air conditioning ("HVAC") companies: plaintiff Edward P. Abely Company, Inc. ("EP Abely") and defendant Lake Industries, Inc. In 2019, James Donlan left Lake, where he had worked for over 20 years, to purchase an equity interest in EP Abely. A dispute subsequently arose between Donlan and EP Abely's co-owner, defendant Allen E. Abely. That dispute was resolved in April

2024, when Donlan and Allen Abely executed a settlement agreement, pursuant to which EP Abely and Donlan agreed to buy out Allen Abely's equity interest and Allen Abely agreed to various restrictive covenants. Allen Abely began working for Lake soon thereafter.

EP Abely filed this action against Allen Abely and Lake in July 2024, alleging that Allen Abely had breached the restrictive covenants in the settlement agreement and defamed EP Abely to its clients, and that Allen Abely and Lake had unlawfully solicited EP Abely's employees and clients. EP Abely brought state law claims for breach of contract, defamation, conspiracy, trade secret misappropriation, and a violation of M.G.L. c. 93A, § 11. Lake countered that when Donlan left Lake to join EP Abely back in 2019, he and EP Abely had likewise unlawfully solicited Lake's own employees and clients. In accordance with that theory, Lake filed counterclaims against EP Abely for tortious interference with business relationships, defamation, aiding and abetting, misappropriation of trade secrets, and a violation of M.G.L. c. 93A, § 11. Lake also filed a third-party complaint, which is premised on the same allegations and which asserts nearly identical claims, against Donlan.

Pending before the Court is EP Abely's motion to dismiss the counterclaims and Donlan's motion to dismiss the third-party complaint. EP Abely argues that all of the counterclaims are time-barred and that certain of them fail to state a claim, and Donlan argues that he was improperly served under Federal Rule of Civil Procedure 14. EP Abely's motion to dismiss the counterclaims will be denied, but Donlan's motion to dismiss the third-party complaint will be granted. As explained below, Lake has plausibly alleged the essential elements of the challenged counterclaims, and it is not clear from the face of the allegations that any of the counterclaims are time-barred. The third-party complaint was improperly served under Rule 14 because Lake does

not allege that Donlan is liable to it for part or all of EP Abely's claims. The Court will, however, grant Lake's request for leave to join Donlan with EP Abely as defendants-in-counterclaim.

## BACKGROUND

### I.    Factual Background.

The following facts, taken as true for purposes of the pending motions, are drawn from the allegations in the counterclaim complaint and the documents sufficiently referenced in that pleading. *See RapDev LLC v. Vecellio*, 761 F. Supp. 3d 313, 317 (D. Mass. 2024). Only those facts relevant to the pending motions are recounted here.

Lake and EP Abely are HVAC corporations that perform work in Massachusetts and New Hampshire. ECF 18, at 15-16, ¶¶ 1-2, 7-8. Lake is incorporated and has its principal place of business in Massachusetts, while EP Abely is incorporated and has its principal place of business in New Hampshire. *Id.* at 15, ¶¶ 1-2. Donlan and his father worked for Lake from March 1996 to March 2019, by which time Donlan was working as a project manager and estimator. *See id.* at 16, ¶¶ 9-11. At the time of his departure, Donlan was intimately familiar with Lake's confidential customer information, estimating formula, organizational structure, processes, techniques, and pricing and business strategy. *See id.* at 17-18, ¶¶ 16, 21.

Donlan purchased an equity interest in EP Abely around the time that he left Lake, and he brought several Lake employees with him to EP Abely. *See id.* at 16-17, ¶¶ 12-13. Since then, Donlan has continued to solicit other Lake employees to join him, including a sheet metal master who left Lake to join EP Abely in September 2021. *Id.* at 17, ¶¶ 14-15. Donlan has also used his knowledge of Lake's confidential information—including his knowledge of its customers, estimating formula, and pricing and business strategies—to contact Lake's clients and solicit their business for EP Abely. *Id.* at 17-18, ¶¶ 18, 21. Using this knowledge, Donlan made disparaging

comments about Lake to its clients and prospective clients, including by questioning whether Lake could perform work at the same quality, and at as low a price, as EP Abely. *See id.* at 17-18, ¶¶ 19-21.

EP Abely has secured the business of at least two of Lake's clients, Draper Labs and Mitre Corp., since Donlan joined in 2019. *Id.* at 18, ¶ 22. Donlan managed and knew confidential information about both clients when he worked at Lake. *Id.* at 18, ¶¶ 24-25. EP Abely now performs a "fair amount of direct work" for Draper Labs, which has ceased contracting with Lake to perform that work. *See id.* at 18, ¶¶ 26-27.

## II.     Procedural History.

EP Abely filed the original complaint against Allen Abely and Lake on July 25, 2024 and an amended complaint on November 1, 2024. ECF 1, 15. The amended complaint asserts five claims. Against Allen Abely, EP Abely asserts claims for breach of contract (Count I) and defamation (Count II). ECF 15, ¶¶ 49-58. Against both Allen Abely and Lake, EP Abely asserts claims for civil conspiracy (Count III); misappropriation of trade secrets, in violation of M.G.L. c. 93, § 42 *et seq.* (Count IV); and unfair and deceptive practices, in violation of M.G.L. c. 93A, § 11 (Count V). *Id.* ¶¶ 59-79.

Allen Abely and Lake answered the amended complaint on November 15, 2025. ECF 18, 19. At the same time, Lake asserted counterclaims against EP Abely for tortious interference with advantageous business relations (Count I); aiding and abetting (Count II); defamation (Count III); misappropriation of trade secrets, in violation of M.G.L. c. 93, § 42 *et seq.* (Count IV); and unfair and deceptive practices, in violation of M.G.L. c. 93A, § 11 (Count V). ECF 18, at 19-22, ¶¶ 29-57.

In late November 2024, Lake filed a third-party complaint under Federal Rule of Civil Procedure 14 against James Donlan. ECF 21. The third-party complaint asserts claims for tortious interference with advantageous business relations (Count I); defamation (Count II); misappropriation of trade secrets, in violation of M.G.L. c. 93, § 42 *et seq.* (Count III); and unfair and deceptive practices, in violation of M.G.L. c. 93A, § 11 (Count IV). *Id.* ¶¶ 29-52.

EP Abely filed a motion to dismiss Lake's counterclaims in January 2025, arguing that they are time-barred and that the allegations fail to state a claim. ECF 30. Donlan filed a motion to dismiss Lake's third-party complaint the same day, contending that its pleading was improper under Rule 14, that the claims are time-barred, and that, in any case, it fails to state a claim. ECF 31. After receiving Lake's oppositions and holding a hearing, the Court took the motions under advisement. ECF 36, 37, 43.

## STANDARD OF REVIEW

"On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pled facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim." *RapDev LLC*, 761 F. Supp. 3d at 319 (citing *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011)). The plaintiff-in-counterclaim must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the [plaintiff-in-counterclaim] pleads factual content that allows the court to draw the reasonable inference that the [defendant-in-counterclaim] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a [counterclaim] complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and

documents that are part of or incorporated into the [counterclaim] complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

## DISCUSSION

### I.    Third-Party Complaint Against Donlan.

The Court first addresses Donlan's motion to dismiss the third-party complaint. Federal Rule of Civil Procedure 14(a)(1) provides that a defendant may serve a third-party complaint on a nonparty "who is or may be liable *to it* for all or part of the claim *against it*." Fed. R. Civ. P. 14(a)(1) (emphases added). Donlan contends that Lake's third-party complaint exceeds the scope of third-party practice authorized by Rule 14 because Lake does not allege that he is liable to it for part or all of EP Abely's claims. *See* Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately."); Charles A. Wright, Arthur R. Miller, Mary K. Kane, & Howard M. Erichson, 6 Fed. Prac. & Proc. § 1460 (3d ed. May 2025 update) ("Wright & Miller") ("[T]he federal courts have entertained both motions to dismiss and to strike [third-party complaints] and have not drawn distinctions between them."). Lake admits that its third-party complaint does not allege that Donlan is liable to Lake for part or all of EP Abely's claims, and it accordingly concedes that it was not authorized to serve the complaint on Donlan under Rule 14. *See* ECF 37, at 1-3. Agreeing that Lake's third-party complaint exceeds the scope of third-party practice authorized by Rule 14(a)(1), the Court will dismiss the third-party complaint without prejudice. *See* Wright & Miller § 1455 ("[A]n impleader complaint also will be dismissed if it does not aver that the third-party defendant is or may be liable to the third-party plaintiff for all or part of plaintiff's claim against defendant[.]").

Lake requests, however, that the Court permit it to join Donlan with EP Abely as a counterclaim defendant under Federal Rule of Civil Procedure 20. That rule provides that persons

"may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see* Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."). Both prerequisites are satisfied here. Lake alleges that Donlan is the President, Treasurer, Secretary, and CEO of EP Abely. ECF 18, at 15, ¶ 3; *see* ECF 15, ¶¶ 7-11 (alleging that Donlan became the majority equity owner of EP Abely after buying out Allen Abely's interest). Before assuming this role, Donlan is alleged to have worked for Lake for over 20 years, from 1996 to 2019. ECF 18, at 16, ¶¶ 9-10. Lake further alleges that Donlan recruited several Lake employees to join him at EP Abely, made disparaging statements about Lake to its clients, and leveraged his knowledge of Lake's confidential information and trade secrets to steal at least two of its clients, both of which Donlan managed while employed at Lake. *See id.* at 17-18, ¶¶ 13-28. Moreover, the actions Donlan allegedly took as the owner and authorized agent of EP Abely form the basis for EP Abely's asserted liability on each of Lake's counterclaims. *See id.* at 19-22, ¶¶ 31, 37-39, 42, 50.[1]

In view of these allegations, the Court concludes that Lake's claims against EP Abely and Donlan are premised on the same issues of law and fact, and that they arise out of the same series of transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2). Lake's request to amend its

---

[1] Lake does not mention Donlan by name in the allegations listed in support of its counterclaim against EP Abely under chapter 93A. ECF 18, at 21-22, ¶¶ 52-57. But it alleges that EP Abely "knowingly and willingly us[ed] Lake's confidential customer information, estimating formula, structure, process and techniques, as well as its, pricing and business strategy *as described above* to gain an unfair competitive advantage competing against Lake." *Id.* at 22, ¶ 54 (emphasis added). In the factual background section of its counterclaims, Lake alleged that Donlan used this precise knowledge "to undercut Lake to unfairly obtain a competitive advantage over Lake." *Id.* at 18, ¶ 21. It is therefore clear that Lake's chapter 93A counterclaim against EP Abely is premised on actions that Donlan allegedly took on behalf of Lake.

counterclaims to join Donlan as a counterclaim defendant will, accordingly, be granted. *See Norfolk S. Ry. Co. v. Smock, Inc.*, 338 F.R.D. 500, 503-05 (N.D. Ind. 2020) (permitting joinder of a new party as a counterclaim defendant pursuant to Rule 13(h)); *Envisn, Inc. v. Davis*, No. 11-cv-12246-FDS, 2012 WL 1672887, at *4-5 (D. Mass. May 11, 2012) (dismissing third-party complaint for failure to allege that third-party defendant, owner of plaintiff corporation, was liable for claims asserted against defendant, but permitting defendant to amend its counterclaim to join plaintiff and its owner as counterclaim defendants); *Broad. Music, Inc. v. Hearst/ABC Viacom Ent. Servs.*, 746 F. Supp. 320, 330 (S.D.N.Y. 1990) (similar); Wright & Miller §§ 1434, 1435 (a non-party may be joined to a suit as a counterclaim defendant so long as the counterclaim is also asserted against a named party).

## II.    Choice of Law.

When, as in this case, subject matter jurisdiction is premised on diversity of citizenship, federal courts apply state substantive law to the parties' claims. *Shay v. Walters*, 702 F.3d 76, 79 (1st Cir. 2012). Generally, "[i]n determining what state law pertains, the court must employ the choice-of-law framework of the forum state," which here is Massachusetts. *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 4 (1st Cir. 1994). But where "the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent choice of law analysis and accept the parties' agreement." *Shay*, 702 F.3d at 80 (brackets omitted) (quoting *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 375 (1st Cir. 1991)).

Although EP Abely and Lake conduct business in both Massachusetts and New Hampshire, neither has expressly addressed which State's law applies. *See generally* ECF 32, 36. They have, however, cited exclusively to Massachusetts law in their briefing, indicating their implied agreement that Massachusetts law governs. *See generally* ECF 32, 36; *Shay*, 702 F.3d at 80 ("the

parties' briefs assume, albeit sub silentio, that Massachusetts law controls"). That agreement is reasonable, given that Lake is incorporated in and has its principal place of business in Massachusetts. *See* ECF 18, at 15, ¶ 1; *Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 467 (2018) (Massachusetts courts apply "the local law of the state which, with respect to [the claims at bar], has the most significant relationship to the transaction and the parties" (quotation marks omitted)). The Court will therefore accept the parties' agreement and apply Massachusetts law. *See Shay*, 702 F.3d at 80.

## III.    Timeliness of Lake's Counterclaims.

EP Abely first contends that Lake's counterclaims for tortious interference with advantageous business relationships, defamation, misappropriation of trade secrets, and unfair and deceptive practices are time-barred.[2] Massachusetts law provides for a three-year statute of limitations for claims of tortious interference with advantageous business relationships, *see* M.G.L. c. 260, § 2A; *Roberts v. S. Steinberg Co.*, No. 040474H, 2005 WL 1869159, at *4 (Mass. Super. July 12, 2005); defamation, *see* M.G.L. c. 260, § 4; *Harrington v. Costello*, 467 Mass. 720, 725 (2014); and misappropriation of trade secrets, *see* M.G.L. c. 93, § 42E. To be timely, these claims must have accrued on or after July 25, 2021, which is three years before the original complaint was filed. *See* M.G.L. c. 260, § 36 ("The provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant. The time of such limitation shall be computed as if an action had been commenced therefor at the time the plaintiff's action was commenced."). A claim for unfair and deceptive practices under chapter 93A is subject to a four-year statute of limitations.

---

[2] Although EP Abely argues that "each of the Counterclaims" is time-barred in its motion to dismiss, ECF 30, at 1, it offers no argument as to why Lake's aiding and abetting counterclaim is time-barred in its memorandum of law, *see generally* ECF 32. EP Abely has therefore waived any argument as to this counterclaim.

M.G.L. c. 260, § 5A; *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 404 (2003). To be timely, this claim must have accrued on or after July 25, 2020. *See* M.G.L. c. 260, § 36. Each counterclaim accrues at the time the counterclaim plaintiff was injured. *See Joseph A. Fortin Constr., Inc. v. Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984); *Harrington*, 467 Mass. at 725 (defamation claim accrues "on publication of the defamatory statement," which occurs when the statement "is communicated to a third party" (quotation marks omitted)).

An affirmative defense, such as the argument that a claim is barred by the statute of limitations, may be raised in a motion to dismiss, "provided that 'the facts establishing the defense are clear on the face of the plaintiff's pleadings.'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (brackets omitted) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)). "Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). But a dismissal based on untimeliness should be granted only "[w]here the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel." *Trans-Spec*, 524 F.3d at 320 (quoting *LaChapelle*, 142 F.3d at 510).

EP Abely argues that Lake's counterclaims are time-barred because, in its view, a "fair reading of the factual allegations underpinning Lake's claims reveals that it knew, or should have known, of Donlan's actions as soon as he left its employ" in 2019. ECF 32, at 7; *see also id.* at 8, 10. This argument misapprehends the legal standard appliable on a motion to dismiss. The question is not whether a "fair reading" of Lake's allegations gives rise to the inference that the counterclaims are time-barred. The question is whether, with all of Lake's well-pleaded allegations

assumed to be true and all reasonable inferences drawn in its favor, there is "no doubt" that the counterclaims are time-barred. *LaChapelle*, 142 F.3d at 509. Properly viewed through this lens, Lake's allegations leave sufficient doubt as to whether its counterclaims are time-barred to survive EP Abely's motion to dismiss.

Largely, this is because Lake includes no more than a handful of dates in its counterclaim allegations, thus precluding the Court from determining with the requisite certainty when Lake's counterclaims accrued. The counterclaim allegations identify only two dates pertinent to the timeliness of the counterclaims: March 2019, when Donlan left Lake and purchased an equity interest in EP Abely, and September 2021, when Donlan convinced a sheet metal master to leave Lake and begin working for EP Abely. *See* ECF 18, at 16-17, ¶¶ 10, 12, 14, 15. The counterclaim allegations do not specify the dates on which any of the other relevant events occurred. For example, while Lake alleges that Donlan "made disparaging statements to current and [prospective] clients of Lake," it does not specify the dates on which these statements were made. *Id.* at 17, ¶ 19. Lake likewise alleges that Donlan leveraged his knowledge of Lake's confidential information to secure business from two clients he formerly managed at Lake, one of whom since "stopped using Lake to perform its direct work," *id.* at 18, ¶¶ 25-26, but it does not specify when Donlan exploited the confidential information, began communicating with the former clients, or secured the former clients' business for EP Abely, *see id.* at 18, ¶¶ 22-27. The dates included in the counterclaim allegations thus fail to show that the limitations period for any of Lake's counterclaims has been exceeded. *See Trans-Spec*, 524 F.3d at 320.

EP Abely responds that the counterclaim allegations indicate that Donlan began engaging in the conduct undergirding Lake's counterclaims—namely, exploiting Lake's confidential information and making disparaging comments to its clients—soon after he departed Lake and

joined EP Abely in 2019. But when Donlan *began* engaging in this conduct is not dispositive of whether Lake's counterclaims are time-barred, because Lake alleges that Donlan has *continued* to engage in such conduct since then. *See* ECF 18, at 17, ¶ 18 (alleging that "*since* Donlan became an owner of EP Abely," he has "used Lake's confidential customer information to contact Lake's clients for the benefit of EP Abely and to seek business from them" (emphasis added)); *id.* at 17, ¶ 19 (alleging that Donlan "has made disparaging statements to *current and [prospective]* clients of Lake, calling into question Lake's ability to perform and to do so for a lower price than EP Abely" (emphasis added)). It thus is plausible that Lake's counterclaims are predicated on discrete injuries that Lake suffered *after* July 25, 2021 because of Donlan's allegedly tortious conduct. To be sure, it is possible that the counterclaims are time-barred. EP Abely may seek discovery that will enable it to determine the precise dates on which Lake's counterclaims accrued, and that information may be presented to the court at summary judgment. At this early stage in the litigation, however, the Court cannot conclude that the counterclaim allegations leave "no doubt" that Lake's counterclaims have expired. *LaChapelle*, 142 F.3d at 509.

## IV.    <u>Sufficiency of the Counterclaims.</u>

EP Abely next argues that each of Lake's counterclaims must be dismissed for failure to state a claim. In its memorandum of law, however, it offers no argument as to why the counterclaim allegations fail to state a claim for aiding and abetting or defamation. *See generally* ECF 32. EP Abely has thus waived argument as to these claims, and they will not be dismissed or analyzed on the merits. EP Abely's arguments concerning the remaining counterclaims—tortious interference with advantageous business relationships, misappropriation of trade secrets, and unfair and deceptive business practices—will be addressed in turn.

A.    <u>Tortious Interference with Advantageous Business Relationships.</u>

Under Massachusetts law, a claim for tortious interference with advantageous business relationships has four elements: "(1) [the plaintiff] had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, 495 Mass. 207, 223 (2025) (quotation marks omitted). EP Abely does not dispute that the counterclaim allegations satisfy the first, second, and fourth elements, nor does it dispute, with regard to the third element, that Donlan "intentionally interfered" with Lake's business relationships. *See* ECF 32, at 5-6. Indeed, Lake alleges that (1) it previously had a business relationship with Draper Labs and Mitre Corp., (2) Donlan managed these clients while he was employed by Lake, (3) Donlan secured business from Draper Labs and Mitre Corp. on behalf of EP Abely, and (4) Lake has been harmed as a result because EP Abely now performs "a fair amount of direct work" for Draper Labs, whereas Draper Labs has "stopped using Lake to perform its direct work." ECF 18, at 18, ¶¶ 22-27.

In EP Abely's view, Lake's tortious interference claim is nevertheless subject to dismissal because it fails to plausibly allege that Donlan's interference was based on improper motive or means. The allegations that Donlan induced Lake's employees to leave Lake, EP Abely contends, are insufficient to establish that Donlan acted with "improper motive or means," because Lake has not alleged that the employees were anything other than at-will. *See* ECF 32, at 6 (citing *Upromise, Inc. v. Angus*, No. 13-cv-12363-DJC, 2014 WL 212598, at *9 (D. Mass. Jan. 21, 2014) ("[S]imply hiring an employee—whether or not the employee was subject to a non-compete with his former

employer—is not sufficient to show improper motive or means.")). Had Lake alleged only that Donlan interfered with its business relationships by soliciting its employees to leave Lake and join EP Abely, this argument might prevail.[3] But Lake also alleges that Donlan, acting as the owner and agent of EP Abely, exploited his knowledge of Lake's confidential business strategy, pricing, and estimating techniques to "undercut Lake" and obtain an unfair competitive advantage. ECF 18, at 18-19, ¶¶ 21, 31. As discussed below, Lake has plausibly alleged that EP Abely is liable for misappropriation of trade secrets, in violation of the Massachusetts Uniform Trade Secrets Act, based on Donlan's alleged use of this confidential information. Consistent with that conclusion, Lake has plausibly alleged that EP Abely acted with "improper motive or means" when it used trade secrets misappropriated by Donlan to intentionally interfere with Lake's business relationships. *See* Restatement (Second) of Torts § 767, cmt. c (1979 Oct. 2024 update) ("Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper."); *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 817 (1990) (affirming verdict for defendant in part because the evidence did not "warrant a finding that [he] violated a statute or a rule of common law"); *cf. Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 241 (D. Mass. 2011) (plaintiff established likelihood of success on the merits of tortious interference claim where it alleged that defendants misappropriated its confidential customer list to poach customers).

---

[3] At the hearing, Lake represented that the counterclaim allegations concerning Donlan's solicitation of its employees are offered to provide background context to its counterclaims for tortious interference with advantageous business relationships, misappropriation of trade secrets, and unfair and deceptive practices. Lake further affirmed that the counterclaims are predicated on Donlan's alleged use of Lake's confidential information to poach its clients.

14

B.    <u>Misappropriation of Trade Secrets.</u>

"To prevail on a claim of misappropriation of trade secrets, a plaintiff must show: (1) the information is a trade secret; (2) the plaintiff took reasonable steps to preserve the secrecy of the information; and (3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret." *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 52 & n.10 (1st Cir. 2007) (numbering formatting altered) (listing elements of common-law claim, but noting that "[t]he statutory and common-law claims may be essentially equivalent"); *see G&L Plumbing, Inc. v. Kibbe*, 699 F. Supp. 3d 96, 105 (D. Mass. 2023) (same elements for claim under the Massachusetts Uniform Trade Secrets Act, M.G.L. c. 93, § 42 *et seq.*); *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 165 (1979) ("The essence of an action for the wrongful use of trade secrets is the breach of the duty not to disclose or to use without permission confidential information acquired from another."). Lake alleges that Donlan used confidential information concerning, among other things, Lake's estimating formula, pricing strategy, and customer information to unfairly obtain a competitive advantage for EP Abely over Lake. ECF 18-19, ¶¶ 21, 31. It is undisputed that these types of information can qualify as trade secrets. *See* M.G.L. c. 93, § 42(4) (defining "trade secret" as "specified or specifiable information," including "business strateg[ies], customer list[s], . . . [and] financial or customer data" that, at the time of the misappropriation, "provided economic advantage" and was subject to reasonable efforts to "protect against it being acquired, disclosed or used without the consent of the person properly asserting rights therein").

EP Abely argues that Lake has nevertheless failed to plausibly allege that any of this information was "confidential, or not otherwise known in the industry, [or] that Lake took any steps to try and protect it." ECF 32, at 9. The Supreme Judicial Court has noted that "[t]he crucial

issue to be determined in cases involving trade secrets . . . is whether the information sought to be protected is, in fact and in law, confidential." *Jet Spray Cooler, Inc. v. Crampton*, 361 Mass. 835, 840 (1972). But it has also cautioned that this determination is fact- and context-specific, such that "'no general and invariable rule can be laid down.'" *Id.* (quoting *Woolley's Laundry v. Silva*, 304 Mass. 383, 389 (1939)). Accordingly, Massachusetts courts look to "six factors of relevant inquiry" when deciding whether information is confidential:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.*[4]

EP Abely argues that Lake cannot state a claim for misappropriation of trade secrets because its allegations that certain types of information were "confidential" are conclusory, and because it has not alleged that Lake "took any steps to try and protect" that information. ECF 32, at 9. This argument overstates Lake's burden on a motion to dismiss and ignores relevant allegations. Conclusory allegations are those that merely parrot the elements of a claim. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The bare allegation that Donlan accessed "confidential information" or "trade secrets," without any details regarding the type of information at issue, would, for instance, be conclusory. But Lake's allegations are not so barren. Lake has alleged that Donlan accessed "proprietary and confidential information"

---

[4] While Massachusetts courts may refer to these factors to determine whether information is confidential, they are not required to apply these factors, which are distinct from the three elements of a claim for misappropriation of trade secrets. *See Jet Spray*, 361 Mass. at 840; *Incase Inc.*, 488 F.3d at 52. EP Abely is therefore incorrect in asserting that "Massachusetts law requires [these six factors] to establish a trade secret claim." ECF 32, at 8.

regarding its estimating formulas, pricing strategies, and customer lists, and that access to this information was "restricted and provided/explained on a need to know and confidential basis." ECF 18, at 18, 21, ¶¶ 21, 48. Although Lake has not alleged facts that specifically bear on the *Jet Spray* factors, it has no obligation to do so at this early stage in the litigation, given that those factors pertain only to the fact-intensive determination of whether information is, "in fact and in law," confidential. *Jet Spray*, 361 Mass. at 840; *see Decotiis v. Whittemore*, 635 F.3d 22, 35 n.15 (1st Cir. 2011) (noting that "fact-intensive" analyses do "not easily lend [themselves] to dismissal on a Rule 12(b)(6) motion").

The Court thus concludes that Lake has plausibly alleged that its estimating formulas, pricing strategies, and customer lists constitute trade secrets; that Lake took reasonable steps to preserve their secrecy; and that Donlan improperly used this information, which he acquired in his capacity as Lake's employee, to economically benefit EP Abely. *See* ECF 18, at 17-18, 21, ¶¶ 18-28, 46-51. These allegations suffice to state a claim for misappropriation of trade secrets. *See Incase*, 488 F.3d at 52; *G&L Plumbing*, 699 F. Supp. 3d at 106 (plumbing contractor was "reasonably likely to establish that its pricing projection and estimating formulas" and its "internal customer and potential customer contact information," all of which were allegedly misappropriated by a former employee, were trade secrets); *EMC Corp. v. Pure Storage, Inc.*, No. 13-cv-12789-JGD, 2016 WL 7826662, at *6 (D. Mass. Aug. 19, 2016) (identifying "'confidential customer-related information including customer lists and contact information, [and] pricing guidelines'" as information that "'is routinely given trade secret protection'" (quoting *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012))).

C.     Unfair and Deceptive Practices.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). To state a claim under M.G.L. c. 93A, § 11, a plaintiff must allege that "a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the claimant suffered a loss of money or property as a result." *Bowers v. Baystate Techs., Inc.*, 101 F. Supp. 2d 53, 54 (D. Mass. 2000); *see Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 562 (2008). EP Abely does not dispute that Lake's counterclaims allege that EP Abely is engaged in trade or business and that Lake lost business and sustained damages as a result of EP Abely's unfair and deceptive practices. *See* ECF 18, at 16, 18, 22, ¶¶ 8, 26, 57. But EP Abely argues that once the "wholly conclusory" counterclaim allegations are set aside, the remaining allegations are "devoid of any allegedly unfair or deceptive actions upon which Lake can base its clai[m]." ECF 32, at 10.

This argument is not persuasive. Chapter 93A does not define what constitutes an unfair or deceptive practice, but "[i]t is well established that a practice or act is unfair under G.L. c. 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." *Milliken*, 451 Mass. at 562-63 (brackets and quotation marks omitted). Lake has plausibly alleged that EP Abely, acting through Donlan, misappropriated Lake's trade secrets for the purpose of gaining an unfair competitive advantage. The misappropriation of trade secrets for competitive gain, as a matter of law and common sense, can be unfair. *See, e.g.*, *Governo Law Firm LLC v. Bergeron*, 487 Mass. 188, 196 (2021) (use of misappropriated confidential customer list to gain competitive advantage can constitute unfair or

deceptive trade practice). Lake has therefore stated a claim for unfair and deceptive acts or practices under chapter 93A.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, EP Abely's motion to dismiss counterclaims, ECF 30, is DENIED. Donlan's motion to dismiss the third-party complaint, ECF 31, is GRANTED. Lake shall have 10 days from the date of this decision to file an amended counterclaim against Donlan.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 8, 2025